UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

AHMAD DAVIS,

                    Petitioner,

v.

SHANE JACKSON,

                    Respondent.

Case No. 1:18-cv-630

Honorable Gordon J. Quist

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Ahmad Davis is incarcerated with the Michigan Department of Corrections at the Muskegon Correctional Facility (MCF) in Muskegon, Michigan. On December 7, 2015, following a five-day trial, an Ingham County Circuit Court jury convicted Petitioner of first-degree felony murder, in violation of Mich. Comp. Laws § 750.316; armed robbery, in violation of Mich. Comp. Laws § 750.529; first-degree home invasion, in violation of Mich. Comp. Laws § 750.110a; being a felon in possession of a firearm (FIP), in violation of Mich. Comp. Laws § 750.224f; and use of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b. On January 13, 2016, the court sentenced Petitioner to concurrent prison terms of life imprisonment for murder; eighteen years, nine months to 73 years, four months for armed robbery; thirteen years, four months to twenty years for home invasion; and three years, two months to five years for FIP. Those

sentences were to be served consecutively to a sentence of two years for felony-firearm.

On February 20, 2018, Petitioner filed his habeas corpus petition raising three grounds for relief, as follows:

I.  Petitioner's right to confrontation was violated when a police detective was allowed to testify to the contents of an anonymous tip in order to vouch for the reliability of the police investigation and to inculpate Petitioner. Additionally, trial counsel was ineffective in failing to object.

II.  Petitioner was denied a fundamentally fair trial by improper vouching/bolstering by the investigating detective of witness credibility and improper opinion testimony by the investigating detective. Further, trial counsel was ineffective for failing to object.

III.  Petitioner's conviction must be reversed because the evidence is insufficient to establish that he was the perpetrator, i.e., insufficient evidence of the identity of the killer.

(Pet., ECF No. 1, PageID.6-9.)[1]  Respondent has filed an answer to the petition (ECF No. 12) stating that the grounds should be denied because they are procedurally defaulted, meritless, noncognizable on habeas review, meritless, and/or any error was harmless.   Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are procedurally defaulted and or meritless.   Accordingly, I recommend that the petition be denied.

---

[1] Petitioner identifies his habeas issues in the petition; but, he directs the Court to his Michigan Supreme Court application for leave to appeal for the supporting argument.  (Pet., ECF No. 1, PageID.6, 8-9.)  Petitioner attached his application to the petition.  Nonetheless, the Court will refer to the application as it appears in the Rule 5 materials from the Respondent.  (ECF No. 13-11, PageID.611-642.)

## Discussion

### I.    Factual allegations

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> The victim and his long-time girlfriend, Rachel Johnson, sold marijuana from their house.  On the evening of May 4, 2014, the victim and Johnson were sitting on the couch watching television.  Because the weather was nice, they left the front door to the house open, but locked the screen door.  Johnson heard the sound of the screen door being forced open.  A man walked into the house with a gun, demanding, " 'Give me everything you got.' "  Johnson sat on the couch in shock and stared at the intruder, who she described as a black male wearing dark clothes and a bandana that covered the lower part of his face.  Johnson identified defendant as the intruder at trial, noting that on the night of the shooting, his eyes stood out to her because they were distinctive.

> The victim pulled some money out of his pocket and threw it on the floor.  However, the intruder insisted that he wanted everything they had.  At that point, Johnson's dog came up to the intruder and started biting at him.  A fight ensued between the victim and the intruder.  As Johnson ran out of the house to get some help, she heard a gunshot, heard her dog yelp, and heard a second shot after a short pause.  Johnson ran to her neighbor's house for help.  The neighbor grabbed a bat and came back to the house with Johnson.  When they arrived at the house, the intruder and the money were gone, and the victim was lying on his back, bleeding from the armpit and mouth.

> The victim sustained two gunshot wounds and blunt-force injuries.  Lansing Police Detective Scott Polhemus processed the scene and testified that he found blood splatters all over the wall of the front doorway leading into the house.  He collected samples from the blood found on the wall next to the entrance of the dining room, the front door entryway, the living room floor, the dining room floor, the wall of the living room, and the interior of the front door knob.  He also found blood on the sidewalk and the front steps leading to the house.  The samples were submitted to the police crime laboratory.

> Lansing Police Detective Brad St. Aubin testified that after he visited the crime scene, he assumed that a drug deal had gone bad.  During his investigation, he received an anonymous tip identifying defendant as the shooter.  His interest was piqued because the tip stated that defendant had shot himself in the web of the hand and, while Detective St. Aubin was not sure whether the intruder sustained any gunshot wound, he knew that the victim had been shot in the web of the hand.  Officers obtained a DNA sample from defendant.  The sample ultimately matched blood samples from the home.

(Mich. Ct. App. Op., ECF No. 13-10, PageID.513-514.)  "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)."  *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016) (footnote omitted).  Petitioner sets out his argument by reference to his briefs in the Michigan appellate courts.  (Pet., ECF No. 1, PageID.6, 8-9; Pet'r's Appl. for Leave to Appeal, ECF No. 1, PageID.28-59.)  Although Petitioner takes issue with the court of appeals' legal determinations, he does not challenge the facts as set out by the appellate court and, indeed, his own factual summary is not at all inconsistent with the facts summarized above.  (Pet'r's Appl. for Leave to Appeal, ECF No. 13-11, PageID.612-618.)

Petitioner was tried twice for these crimes.  The first trial spanned six days during July of 2015.  The trial court declared a mistrial after the jury was unable to reach unanimous verdicts on any of the charges. (Trial I Tr. VI, ECF No. 14-4.)

The second trial played out much like the first.  Most of the same witnesses testified.  The jury, however, deliberated for only about three hours before finding Petitioner guilty on all charges.  (Trial II Tr. V, ECF No. 14-9, PageID.1073.)  Petitioner was represented by the same counsel in both trials. Comparison of opening argument, closing argument, and cross-examination of witnesses from both trials

indicates that counsel employed the same strategy in the second trial that he employed in the first.  In both cases counsel's strategy clearly involved questioning the investigation led by Detective Brad St. Aubin, an investigation based upon a convenient confidential tip.  Petitioner's counsel contended that after the tip, the detective simply ignored other possible suspects.

Petitioner, with the assistance of counsel, directly appealed his convictions.  He raised the same issues in the Michigan Court of Appeals that he raises in his habeas petition. (Pet'r's Appeal Br., ECF No. 13-10, PageID.526.)  By unpublished opinion issued May 9, 2017, the Michigan Court of Appeals rejected all of Petitioner's challenges and affirmed the trial court. (Mich. Ct. App. Op., ECF No. 13-10, PageID.513-521.)

Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court raising the same three issues.  (Pet'r's Appl. for Leave to Appeal, ECF No. 13-11, PageID.611-642.)  By order entered December 27, 2017, the Michigan Supreme Court denied leave to appeal.  (Mich. Order, ECF No. 13-11, PageID.610.)

Petitioner did not file a petition for certiorari in the United States Supreme Court.  (Pet., ECF No. 1, PageID.3.)  Instead, he timely filed his petition in the United States District Court for the Eastern District of Michigan.  That court transferred the petition here on June 5, 2018.  (Order, ECF No. 6.)

## II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person

who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

7

## III.    Confrontation clause

The lead investigator on Petitioner's case was Detective Brad St. Aubin. Detective St. Aubin testified that the police received a couple of anonymous tips regarding the killing.  One of those tips identified Petitioner as the perpetrator. Detective St. Aubin found the tip at least somewhat credible in that the tipster reported the perpetrator was shot in the web of his hand.  It was the victim who was shot in the hand, not the perpetrator, but St. Aubin testified that such a detail was the sort of information that lent some credence to the tip.

Because of DNA evidence collected from the crime scene, St. Aubin attempted to collect a DNA sample from Petitioner to either confirm the tip or move on.  Through a subterfuge, the police were able to collect a DNA sample from Petitioner.  It matched the DNA at the crime scene.  Moreover, the victim's girlfriend identified Petitioner as the man who burst into the home and threatened them.  Although a bandana covered part of his face during the crime, she was able to identify him by his eyes.

Petitioner claims that permitting the jurors to hear the out-of-court statements of the tipster through the testimony of Detective St. Aubin violated his rights under the Confrontation Clause.[2]  The Confrontation Clause of the Sixth Amendment gives

---

[2] Respondent argues that the Confrontation Clause issue was procedurally defaulted when Petitioner failed to object to the testimony at trial.  As set forth in detail in section IV, below, "[i]f a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar federal review." *Magwood v. Patterson*, 561 U.S. 320, 340 (2010).  Nevertheless, the U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.  *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if

the accused the right "to be confronted with the witnesses against him." U.S. Const. amend. VI; *Pointer v. Texas*, 380 U.S. 400, 403-05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause therefore prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

If the tipster's identification of Petitioner as the perpetrator were a "testimonial statement," there is little doubt that it is exactly the type of statement that the Confrontation Clause is intended to keep out of criminal trials. *Id*. at 42-50. The Supreme Court declined "to spell out a comprehensive definition of 'testimonial.'" *Id*. at 68 (footnote omitted). Nonetheless, it has staked out the "perimeter" of the meaning of testimonial by reference to the dictionary definition:

---

it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999). The Court proceeds here without deciding the procedural default issue.

> "The text of the Confrontation Clause reflects this focus [on testimonial hearsay]. It applies to 'witnesses' against the accused—in other words, those who 'bear testimony.' 1 N. Webster, An American Dictionary of the English Language (1828). 'Testimony,' in turn, is typically 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact.' *Ibid.* An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." 541 U.S., at 51, 124 S.Ct. 1354.

*Davis v. Washington*, 547 U.S. 813, 823-24 (2006) (quoting *Crawford*). The *Crawford* Court also referenced statements that were at their core testimonial, including "'pretrial statements that declarants would reasonably expect to be used prosecutorially . . . .'" *Crawford*, 541 U.S. at 51. The Sixth Circuit has often "deemed confidential informant's statements to be testimonial, on the view that an objectively reasonable confidential informant would anticipate that her statements would be used by the police to investigate and prosecute the accused." *United States v. Parsons*, __ F. App'x __, No. 19-5556, 2020 WL 801523, at *2 (6th Cir. Feb. 18, 2020). Accordingly, statements such as the tipster's statement here may be at the core of that which is testimonial and are certainly within the "testimonial" perimeter.

But, even testimonial statements do not run afoul of the Confrontation Clause if the statement is not offered to prove the truth of the matter asserted. *Williams v. Illinois*, 567 U.S. 50, 57-58 (2012) ("[T]he Confrontation Clause . . . has no application to out-of-court statement that are not offered to prove the truth of the matter asserted."). The Michigan Court of Appeals concluded that Detective St. Aubin's recounting of the tipster's statement fell into that category:

Detective St. Aubin testified that the police identified defendant as a possible suspect in the crime on the basis of information provided by an anonymous tip.  His testimony was not offered to prove the truth of the information supplied by the tipster.  Rather, it was offered to explain why Detective St. Aubin identified defendant as a possible suspect and decided to obtain a DNA sample for comparison.  Moreover, not all the information provided by the tipster was true, and Detective St. Aubin could not have offered it to prove that it was true.  While the tipster stated that defendant had shot himself in the web of the hand during the incident, the only evidence was that the victim sustained a gunshot wound to the hand.  Because the testimony about the anonymous tip was not offered to establish the truth of the information, its admission did not violate the Confrontation Clause.

(Mich. Ct. App. Op., ECF No. 13-10, PageID.515.)

The state appellate court's analysis applied the clearly established federal standard.  Moreover, it did not apply the standard inconsistently with established federal law; Petitioner has not identified any cases the Supreme Court has decided differently on a set of materially indistinguishable facts.[3]  Petitioner cites two Sixth Circuit cases, *United States v. Nelson*, 725 F.3d 615 (6th Cir. 2013) and *United States v. Hearn*, 500 F.3d 479 (6th Cir. 2007).  Those cases are not clearly established federal law for purposes of 28 U.S.C. § 2254(d)(1), which precludes habeas relief unless the state court decision is contrary to "clearly established Federal law as determined by the Supreme Court of the United States[.]"  *Id.*

---

[3] Petitioner cites state-court cases, (Pet'r's Appl. for Leave to Appeal, ECF No. 13-11, PageID.625-626, 628), which are not binding precedent and plainly do not clearly establish federal law.  Plaintiff also cites cases from other federal circuits (*id.*, PageID.627-628), which are not binding precedent and also do not clearly establish federal law for purposes of 28 U.S.C. § 2254.

11

Moreover, *Nelson* and *Hearn* are not based on materially indistinguishable facts.  In *Nelson*, the issue that came to the jury by way of out-of-court informant statements was that the defendant possessed a gun.  There was no other evidence of that fact, other than circumstantial evidence.  No police officer saw the defendant in possession of a gun.  The court concluded that the "gun possession" detail of the informant's statement was not a necessary part of the "coherent narrative of the investigation" to prevent the jury from becoming "confused about why officers were targeting a particular individual." *Nelson*, 725 F.3d at 621.  Similarly, in *Hearn*, the court concluded the out-of-court informant statements put before the jury went far beyond what was necessary to explain why police targeted the defendant and was introduced by the government intentionally for the purpose of establishing elements of the crime.  *Hearn*, 500 F.3d at 483-84.

In Petitioner's case, however, the informant's identification of Petitioner as the perpetrator was critical for the jury to understand why the police were targeting Petitioner.  Moreover, there was substantial additional direct evidence implicating Petitioner, including positive identification of Petitioner by Ms. Johnson and the presence of Petitioner's DNA at the scene of the crime.

Petitioner's case is more similar to Sixth Circuit cases where the court concluded the out-of-court statements from an informant were properly admitted. *See, e.g., United States v. Reynolds*, 684 F. App'x 510, 515 (2017) ("The detective's statement at trial was not used by the government for its truth but rather as background information to explain how and why law enforcement was investigating

defendant."); *United States v. Gibbs*, 506 F.3d 479, 486 (6th Cir. 2007) ("'In some circumstances, out of court statements offered for the limited purpose of explaining why a government investigation was undertaken have been determined not to be hearsay.'"); *United States v. Warman*, 578 F.3d 320, 346 (6th Cir. 2009) ("[E]vidence that is 'provided merely by way of background' or is offered only to explain[] how certain events came to pass or why the officers took the actions they did,' is not offered for the truth of the matter asserted.") (citations omitted); *United States v. Napier*, 787 F. 3d 333, 348 (6th Cir. 2015) ("[The evidence] was offered for the limited purpose of showing the course of the agents' investigation . . . ."). These authorities support the conclusion that the state court's resolution was reasonable.

Petitioner has failed to show that the appellate court's rejection of his Confrontation Clause claim is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to habeas relief on the claim.

## IV.    Other issues relating to Detective St. Aubin's testimony

Petitioner goes on to attack several other aspects of Detective St. Aubin's testimony, arguing that the trial court should not have permitted testimony from Detective St. Aubin:  (A) regarding what Alex Kemper or Rachel Johnson told the detective during the investigation; (B) opining that criminals do not report crimes against them by other criminals, and explaining why non-black males and Ms. Johnson were eliminated as suspects; (C) vouching for his own investigation; and (D) vouching for Ms. Johnson's credibility. The Michigan Court of Appeals noted that Petitioner had failed to object to the testimony at trial and reviewed the claims only for plain error.  (Mich. Ct. App. Op., ECF No. 13-10, PageID.516.)   The court

concluded as to each issue, there was no error, much less plain error.    (*Id.*, PageID.516-519.)

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).  To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether:  (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim.  *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).  In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim.   *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).  The last reasoned state-court decision here is that of the Michigan Court of Appeals.

The   Michigan   Court   of   Appeals   expressly   relied   on   Michigan's contemporaneous objection rule in denying Petitioner's claim.  The contemporaneous objection rule was well-established at the time of Petitioner's trial.  *See, e.g.*, *People v. Carines*, 597 N.W.2d 130, 139 (Mich. 1999); *People v. Stanaway*, 521 N.W.2d 557, 579 (Mich. 1994) (citing cases); *People v. Kelly*, 378 N.W.2d 365, 369-70 (Mich. 1985).

14

A rule designed to arm trial judges with the information needed to rule reliably "serves a governmental interest of undoubted legitimacy."  *Lee v. Kemna*, 534 U.S. 362, 385 (2002).

　　　After expressly noting Petitioner's failure to object, the Michigan Court of Appeals then reviewed Petitioner's claim for plain error, finding none.  In this circuit, "plain error review does not constitute a waiver of state procedural default rules." *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000) (citations omitted); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Fleming v. Metrish*, 556 F.3d 520, 530 (6th Cir. 2009); *Keith v. Mitchell*, 455 F.3d 662, 673-74 (6th Cir. 2006); *Scott v. Mitchell*, 209 F.3d 854, 866-68 (6th Cir. 2000); *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998); *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991) (same); *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989).  Accordingly, Petitioner's failure to comply with the state's independent and adequate state procedural rule, *i.e.*, making a contemporaneous objection, caused him to default his claims in state court.  *See Wainwright v. Sykes*, 433 U.S. 72, 86-88 (1977); *Taylor v. McKee*, 649 F.3d 446, 450 (6th Cir. 2011); *Awkal v. Mitchell*, 613 F.3d 629, 648 (6th Cir. 2010); *Lancaster*, 324 F.3d at 437; *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996).

　　　Because Petitioner procedurally defaulted his federal claims in state court, he must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice.  *See House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v.*

*Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52.  The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence.  *House*, 547 U.S. at 536.  A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.  *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner makes no credible claim of actual innocence here.  To succeed in making such a claim, Petitioner must show "that 'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.' " *Coleman*, 244 F.3d at 540 (quoting *Schlup,* 513 U.S. at 329).  Other than perhaps baldly claiming he is actually innocent, Petitioner does not even attempt to make the necessary showing.  Therefore, Petitioner's only means of avoiding the procedural default bar is to show cause and prejudice.

To show cause sufficient to excuse a failure to object, Petitioner must point to "some objective factor external to the defense" that prevented compliance with the rule.  *Murray*, 477 U.S. at 488; *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991).  Factors that may establish cause include interference by officials, attorney error rising to the level of ineffective assistance of counsel, and a showing that the factual or legal basis for a claim was not reasonably available.  *Murray*, 477 U.S. at 488-89; *see also Cvijetinovic v. Eberlin*, 617 F.3d 833, 837 (6th Cir. 2010) (citing *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004) (citing *McClesky v. Zant*, 499

U.S. 467, 493-94 (1991) (quotations omitted)).  Where a petitioner fails to show cause, the court need not consider whether he has established prejudice.  *See Engle*, 456 U.S. at 134 n.43; *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985).

As excuse for his default, Petitioner claims his counsel rendered ineffective assistance when he failed to object to the testimony outlined above.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

17

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under Section 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The Michigan Court of Appeals considered the merits of Petitioner's ineffective assistance of counsel claims with respect to the Confrontation Clause claim and counsel's failure to object to the other aspects of St. Aubin's testimony:

> [D]efendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).  Defendant bases his claims of ineffective assistance on two alleged errors.  First, defendant argues that counsel was ineffective for failing to object to Detective St. Aubin's testimony about the contents of the anonymous tip because it violated his right to confront the witnesses against him.  As previously discussed, this testimony regarding the contents of the anonymous tip did not violate defendant's right to confront the witnesses against him because it was not offered for the truth of the matter asserted.  See *Chambers*, 277 Mich App at 10-11. Because the testimony was proper, defense counsel was not ineffective for failing to object to it.  *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

18

> Second, defendant also argues that counsel should have objected to Detective St. Aubin's testimony that bolstered and vouched for witnesses' credibility.  Again, Detective St. Aubin's testimony did not bolster or vouch for witnesses' credibility but merely explained his investigation, the leads he pursued, and how defendant was identified as a suspect in the crime.  Therefore, any objection would have been futile.  Accordingly, defendant was not denied the effective assistance of counsel.

(Mich. Ct. App. Op., ECF No. 13-10, PageID.520-521.)  Although the court of appeals relied on state authority, it applied a standard functionally identical to the *Strickland* standard.

The proposed objections to St. Aubin's testimony raise only state law claims— they are garden-variety "rule of evidence" claims that the court improperly admitted hearsay or opinion evidence.  The state court determined that each proposed objection had no merit.  It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  The decision of the state courts on a state-law issue is binding on a federal court.  *See Johnson*, 559 U.S. at 138; *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).  *See also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same).  Accordingly, the Michigan Court of Appeals determination that the proposed objections had no merit binds this Court.

Moreover, the state court's conclusion that counsel is not required to raise meritless or futile objections to effectively assist his client is certainly consistent with the law of this circuit, *see, e.g., Richardson v. Palmer*, 941 F.3d 838, 857 (6th Cir. 2019) ("[D]efense counsel cannot be deemed ineffective for failing to make an argument that would have been futile."), and is not inconsistent with clearly established federal law.  It defies logic to suggest that reasonable professional conduct requires counsel to raise meritless arguments.  Accordingly, Petitioner has failed to show that his counsel rendered ineffective assistance when he failed to raise the proposed objections.  Because Petitioner's ineffective assistance claim fails, he has not established cause to excuse his procedural default and the default bars habeas relief on his claim.

## V.    Sufficiency of the evidence

Petitioner next claims that the evidence was insufficient to permit the jury to find, beyond a reasonable doubt, that he was guilty of the charged crimes.[4]  Petitioner argues that if one disregards the eyewitness testimony identifying him as the perpetrator and the DNA evidence, the evidence was not sufficient to support the verdicts.  (Pet'r's Appeal Br., ECF No. 13-10, PageID.558-561.)  Petitioner then proceeds to explain why the eyewitness testimony should be disregarded—it was

---

[4] Petitioner specifically refers the Court to his Michigan Supreme Court application for leave to appeal for the substance of his argument.  (Pet., ECF No. 1, PageID.9.)  Although he raises the sufficiency claim in that document, he does not present argument.  Accordingly, the Court will address Petitioner's sufficiency argument as presented in his Michigan Court of Appeals brief.  (Pet'r's Appeal Br., ECF No. 13-10, PageID.568-561.)

20

equivocal and not credible—and why the DNA evidence should be disregarded—it

was inconclusive and does not establish that Petitioner killed the victim.  (*Id*.)

The Michigan Court of Appeals flatly rejected Petitioner's claims:

Identity is an element of every crime.  *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).  Positive identification by a witness may be sufficient to support a conviction for a crime.  *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000).  "The credibility of identification testimony is a question for the trier of fact that we do not resolve anew." *Id*.  Defendant argues that Johnson's identification of him as the perpetrator was flawed because she had limited opportunity to identify the intruder, whose face was concealed with a bandana.  Specifically, defendant argues that Johnson looked at defendant's photograph in the newspaper after his arrest, and that is why she identified him as the shooter at trial.

There is nothing in the record to indicate that Johnson's identification was flawed.  While the intruder covered the lower half of his face with a bandana, this would not have prevented Johnson from observing his eyes and physical characteristics.  At trial, Johnson testified that when the intruder walked into the house, she stared at him in shock.  Additionally, there was testimony that Johnson indicated that defendant had "beady eyes."  Johnson identified defendant in court as the intruder, specifically stating that defendant's eyes stood out to her because they were distinctive.  Although she admitted to looking at defendant's photograph "a few times" after his arrest, the jury was able to consider that against her ability to identify defendant on the basis of his eyes and physical characteristics on the night of the shooting.

Defendant also argues that Johnson's credibility was undercut by the fact that she testified under a grant of immunity.  However, the jury was apprised of Johnson's immunity and was able to take that into account in determining whether defendant was guilty.  Again, the credibility of witnesses and the weight accorded to evidence are questions for the jury.  See *People v McGhee*, 268 Mich App 600, 624; 709 NW2d 595 (2005).  Accordingly, defendant's claim is without merit.

Next, defendant argues that apart from the DNA evidence and unpersuasive circumstantial evidence there was no evidence that he was the shooter.  We disagree.  "'Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime.'"  *Carines*, 460 Mich at 757 (citation omitted).  In this case, Johnson testified that an intruder who she identified at

trial as defendant entered her home on the night of the shooting with a gun. The victim attacked the intruder and the men began fighting. Johnson heard two gunshots as she ran to a neighbor's house. When Johnson returned to the house with a neighbor, defendant and the money were gone. The blood found at the scene matched defendant's DNA profile. Viewed in the light most favorable to the prosecution, the DNA evidence, together with Johnson's identification of defendant, was sufficient for the jury to find defendant guilty of the crimes.

(Mich. Ct. App. Op., ECF No. 13-10, PageID.519-520.)

A Section 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's

claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).  This standard erects " 'a nearly insurmountable hurdle' " for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds.  *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Petitioner's claim that the evidence was insufficient borders on frivolous. Petitioner asks the Court to view the evidence in a light that favors him and invade the province of the jury to assess Ms. Johnson's credibility.  It is Petitioner's argument, not the state court's determination, that requires a patently unreasonable application of clearly established federal law.  The eyewitness testimony of Ms. Johnson and the corroborating DNA evidence is sufficient to support the jury's verdicts.  The state court of appeals applied the appropriate standard from *Jackson*, and it applied the standard reasonably.  Accordingly, Petitioner is not entitled to habeas relief on his sufficiency of the evidence claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir.

2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Accordingly, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Respectfully submitted,

Date: April 18, 2020                          /s/ Phillip J. Green
                                             PHILLIP J. GREEN
                                             United States Magistrate Judge

## NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).